REMINGTON *v.* STARING.

CANCELLATION OF INSTRUMENTS—MORTGAGES—FRAUD—DURESS—
HUSBAND AND WIFE.

Bank director and wife, who voluntarily executed mortgage on property owned by them by entireties for purpose of raising money to save bank of which husband was director, are not entitled to have it canceled without putting mortgagees in *statu quo;* claim of fraud and duress not being established.

Appeal from Allegan; Miles (Fred T.), J. Submitted June 16, 1932. (Docket No. 6, Calendar No. 35,932.) Decided January 3, 1933.

Bill by Charles N. Remington and Myron B. Moore against George Staring and others to foreclose a mortgage. Cross-bill by defendants Staring to cancel the mortgage. Decree for cross-plaintiffs. Plaintiffs appeal. Reversed.

*Knappen, Uhl, Bryant & Snow,* for plaintiffs.

*Cornelius Hoffius,* for defendants.

POTTER, J. Plaintiffs filed a bill to foreclose a mortgage for $5,000 given by defendants George Staring and Julia Staring to plaintiffs, covering lands in Allegan county. From a decree for defendants Staring, plaintiffs appeal. Prior to November 12, 1926, the date of the mortgage in ques-

tion, defendant George Staring was a stockholder and director in the First National Bank of Allegan. O. S. Cross was president of the bank and Myron B. Moore cashier. The bank became involved financially. About October 30, 1926, a national bank examiner, after examination of the bank, informed the directors the capital of the bank was impaired, and the bank could not continue business further, unless by November 4, 1926, $40,000 was raised and paid into the bank. The president and cashier, Messrs. Cross and Moore, guaranteed to raise $40,000, and, at the same time, an agreement was made and entered into as follows:

"THE FIRST NATIONAL BANK OF ALLEGAN
"Allegan, Michigan
"Oct. 30, 1926
"Whereas it is necessary for the directors of the First National Bank of Allegan, Mich., to raise the sum of $40,000, to underwrite a stock assessment on the bank stock of said bank;

"Therefore it is hereby mutually agreed as follows:

"That the undersigned hereby jointly and severally guarantee the payment of said sum of $40,000. Said sum to be deposited in this bank in cash through a trustee who will be appointed by the directors for the express purpose of a stock assessment.

"Unless this sum is paid in full in cash by 6 p. m. on Nov. 4, 1926, this agreement to be null and void.

"The liability of each of the undersigned hereon is hereby expressly limited to the sum of $5,000.

"In case it becomes necessary to borrow said sum of $40,000 or any part thereof, then the undersigned hereby agree to sign any note, bond or other evidence of indebtedness necessary to borrow said money.

"In witness whereof we have hereunto set our hands and seals this 30th day of October 1926.
"In presence of:

.....................      "Orien S. Cross
.....................      "E. C. Reid
                     "A. L. Robinson
                     "George Staring
                     "Arthur Odell
                     "C. W. Young
                     "Myron B. Moore
                             "Directors."

The $40,000 which was agreed to be paid was not paid by November 4, 1926, but was subsequently raised and paid. Defendants Staring owned their real estate as tenants by the entirety, and it was not subject to execution for the debts of either. Defendant George Staring was the owner of $1,000 in par amount of the stock of the First National Bank. His note for $5,000 would not be collectible. Messrs. Cross and Moore went to see him at his home, and he and his wife there executed a promissory note for $5,000, and later Staring and his wife went to the First National Bank and executed the real estate mortgage in question. It was the understanding at the time the mortgage was given an assessment of 100 per cent. would be levied against all the stockholders in the bank, and the proceeds of this assessment used to pay those who advanced the $40,000 so the stockholders would bear the losses of the bank in accordance with their stock holdings in the bank. December 8, 1926, the acting comptroller of currency wrote to the board of directors of the First National Bank, stating he had received the report of an examination of the bank, together with the guarantee executed by directors Moore and Cross, binding themselves to the extent of $40,000 toward the restoration of the bank's impairment of capital.

"The report discloses losses of $67,965.71, which consume the surplus and undivided profits and impair the bank's capital to the extent of $47,143.25. A national bank cannot be permitted to continue operations with its capital impaired, and there is therefore inclosed a formal notice of impairment of capital in the sum of $47,144 with the necessary instructions relating thereto."

Attention was called to the provisions of section 5205, U. S. Revised Statutes as amended (12 USCA, § 55), directions given as to the method of levying the assessment, charging off the loss, and directing that the comptroller be advised. This letter contained a statement that, "If the directors will voluntarily and unconditionally purchase for cash sufficient of the worthless assets to restore the capital, the formal notice of impairment may be considered inoperative."

On the same day the deputy comptroller of the currency wrote to Mr. Moore calling his attention to the letter just referred to from the acting comptroller, and saying:

"You are requested to read the letter and the copy of the examiner's report left with the bank and, with the other directors, make joint reply thereto over your individual signatures, with the least possible delay."

A meeting of the directors of the First National Bank was called, and, on December 20, 1926, an answer to the letters of the acting comptroller and deputy comptroller of currency was made, signed, and forwarded to the comptroller of the currency. This letter was signed by defendant George Staring. The condition of the bank did not improve, and January 27, 1927, it was closed. Subsequently an assessment was levied against the shareholders, and

defendant George Staring, not having paid the amount of his assessment, $1,000, judgment was rendered against him therefor. The directors who put up the $40,000, after the bank closed claimed they had a preferential claim against the bank for this amount, and instituted suit in the Federal court to establish such preference. December 5, 1927, defendant George Staring wrote a letter indicating he desired to join as a plaintiff in such suit. Six months after the mortgage was given, defendant Staring paid $150 upon the mortgage.

Upon the filing of the bill of complaint herein, the defendants Staring appeared and answered, claiming in defense the mortgage was procured by fraud and duress.

The bank was a depositary of county funds, and had given a bond signed by its directors as sureties, on which the defendant George Staring had justified in the amount of $20,000. This justification was not true. Staring's property was held by himself and wife as tenants by the entirety. Staring and wife claimed the reason they signed the $5,000 note was because George Staring was told if the bank failed and the sureties upon this bond for county money deposited became liable on the bond, he might be criminally prosecuted for the reason he signed the bond and justified his responsibility in the sum of $20,000, when his property was not subject to levy and sale on execution. It does not appear the defendant George Staring might not have been criminally prosecuted for a false affidavit attached to this bond. Defendants Cross and Moore, who went to the home of the Starings for the purpose of procuring the $5,000 note, say no threats of criminal prosecution were made against Staring, that Staring asked what might be done in relation to this bond

for county moneys by reason of his false affidavit of responsibility, and that Judge Cross told him he might be arrested on a *capias*. He had already signed the agreement at the bank subjecting himself to a liability limited to $5,000. He evidently gave his promissory note signed by his wife in pursuance of such agreement. Subsequently it was ascertained this note could not be negotiated. The bank could not get the money thereon unless it was secured. Defendant Staring and wife voluntarily went to the bank and executed the real estate mortgage in question. After the failure of the bank, defendant George Staring indicated he desired to join in the suit to establish the $40,000 as a preferred claim against the bank. He was interested to the extent of $5,000 in this $40,000. Subsequently he paid $150 on the mortgage. The defendant Staring, having obtained the $5,000 upon the note and mortgage in question, which $5,000 was put up with his consent with the bank, in order to save the bank in which he was interested as a director, he cannot now repudiate the transaction and rescind the mortgage without putting the plaintiffs in *statu quo*. He was, at the time the note and mortgage were given, interested in the bank. It was just as important to him as to the other stockholders and directors of the bank there be no public discussion of the financial weakness of the bank which might precipitate a run upon it. Like other financial institutions, when their condition has been crippled and their capital impaired, the affairs of the First National Bank did not work out as contemplated by the persons interested, and defendant Staring with the other directors of the bank were subjected to loss.

Banking, under modern conditions, is a hazardous occupation. Mrs. Staring acted with her husband.

She was not defrauded. The result is unfortunate. Plaintiffs parted with their money. They are entitled to its repayment.

The decree of the trial court is reversed, with costs, and decree for plaintiffs will be entered.

McDONALD, C. J., and CLARK, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.